```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ALABAMA
                         EASTERN DIVISION           01 MAY 30  AM 10: 00
```

PAM CAUDLE,                        )
                                   )
    Plaintiff,                   )
                                   )
vs.                                )    CV 00-BU-2764-E
                                   )
TYSON FOODS, INC.,                 )    **ENTERED**
                                   )
    Defendant.                   )    MAY 30 2001

## MEMORANDUM OPINION

This case is presently before the Court on motion for summary judgment filed by Defendant Tyson Foods, Inc. Doc. 9. Plaintiff Pam Caudle has sued Defendant, alleging that she fell as a result of negligence of Defendant in maintaining a safe work environment. The parties have submitted evidence and briefs in support of their positions, which have been reviewed by the Court. Based on its review of the record, the Court finds that Defendant's motion for summary judgment is due to be granted.

**I.    SUMMARY JUDGMENT STANDARD**

On a motion for summary judgment, the Court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Summary judgment is weighed heavily

in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; 106 S. Ct. at 2553; *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. *Rooney v. Watson*, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing *Hale v. Tallapoosa Co.*, 50 F.3d 1579, 1581 (11th Cir. 1995)).

II.  **STATEMENT OF FACTS**

Pam Caudle is an inspector for the United States Department of Agriculture

(USDA). She had worked at Defendant's chicken processing plant in Heflin, Alabama. The Heflin plant is a poultry processing plant. At the plant, live chickens are slaughtered and, in order to clean the floor, the floor must be washed and is often wet. The floor is actually wet every day. Defendant is required by the USDA and the Federal government to keep the floor clean, and water must be used in order to do that.

Plaintiff's job duties required her to work on the processing line, inspecting chickens that passed by her at the rate of 91 chickens per minute. Plaintiff's job was to cull any chickens that appeared to be diseased or otherwise not suitable for human consumption.

Plaintiff's work area was in the eviscerating area of Defendant's plant. Plaintiff testified that she had complained to her supervisor, John Linville, about the rough and slippery condition of the floor in the eviscerating area where she worked, although she could not recall the date she complained. Normally, when a complaint was made to the Plaintiff's USDA supervisor, Defendant would attempt to repair the complained-of area right away.

On May 5, 2000, Plaintiff was at her job at the Heflin Plant. As the Plaintiff was walking from the office to her place on the line, she fell. At the time of the accident, she was walking through the Heflin plant. The floor in the area where Plaintiff fell was a smooth concrete surface. According to Plaintiff, the area was as smooth as glass.

Defendant's eviscerating area at the Heflin facility has walkways which are designated by a yellow anti-skid surface. In September of 1997, John Chapman, Defendant's Plant Manager of the Heflin facility, designated these areas to have an anti-skid surface primarily to delineate walkways and also identify evacuation routes out of the plant. Plaintiff claims that the area in which she fell did not have a yellow anti-skid surface and/or that the anti-skid surface had worn away.

Plaintiff testified that she knew this concrete floor was wet at the time she was walking to her station. She acknowledges that she knew that it was wet all the time. She states that Defendant sprayed the floor in order to clean the floor into grates. She also acknowledged that Defendant had to keep the floor washed down for both sanitary and safety reasons. She did not expect the floor to be dry.

Plaintiff testified that she knew that the floor was always wet. She states that it was her practice, in order to be safe on the wet floors, to walk slowly with small steps. At the time she fell, Plaintiff did not see any type of debris around the area where she fell. She did not see anything that she had stepped on, stepped in, or stepped around. The only thing that she saw was a wet concrete surface.

After she fell, Plaintiff went to see the plant nurse. Plaintiff contends John Chapman, Defendant's plant manager, told her at this time that he should have already fixed the floor, but that it was going to cost $48,000.00 to fix it. Defendant denies this statement.

Plaintiff wanted to go to the doctor after her fall, but her boss told her that she

needed to stay at work and that she could sit in the chair at work just as easily as she could sit at home. Plaintiff returned to work after her fall.

On the date of the accident, the Plaintiff acknowledged that she stayed at work the remainder of the day. She did not seek medical treatment until three days after the accident.

As a result of the fall, Plaintiff suffered injuries to her ankle, neck, and a ruptured disc. Plaintiff had surgery to repair the ruptured disc on November 28, 2000.

Plaintiff lost income due to time missed from work as a result of the injury she suffered in the fall.

Plaintiff contends that she was never given any regulation with which she was required to comply. Plaintiff further testified that she was not aware of any USDA regulation requiring her to wear a certain type of footwear. She also was not aware of any footwear requirements established by Defendant.

Defendant has produced evidence of certain policies and procedures that Plaintiff had to follow as an employee of the USDA at Defendant's Heflin plant. Plaintiff testified that she did not know if she was required to comply with the Tyson Foods plant rules, but she acknowledges that she has seen different notices posted delineating policies that Defendant has established for people within the plant, either employees or others. She states that she has tried to comply with these posted policies and procedures.

Defendant's posted policy requires that shoes must be in good repair and have a nonslip sole; it prohibits tennis, slick-soled shoes, and open toed shoes. These requirements were posted in the cafeteria area of the Heflin plant for at least two to three years.

The sole of one of Plaintiff's boots that she was wearing at the time she fell was significantly worn; thus, the sole was smooth and not slip resistant.[1] In her deposition, Plaintiff could not recall the material of the sole of her boot. Also, she was unsure as to the pattern of the tread on the sole of the shoe. She did not know whether her shoes complied with any of the footwear policies of the USDA or Defendant.

## III.  DISCUSSION

Plaintiff contends that the floor of her work area was "unsafe" and that Defendant was negligent in failing to maintain this area in a safe condition. Defendant contends that it did not breach any duty to Plaintiff as a business invitee because Plaintiff was aware of the alleged "dangerous condition."[2]

---

[1] In accordance with Appendix A, Plaintiff contends that this fact is unsupported because it is based solely on Chapman's observation and he is not "qualified" to determine whether a shoe is "significantly worn" and/or whether it is slip resistant. Doc. 14, pp. 11-12. The Court finds that Chapman's testimony is admissible and he is "qualified" to testify as to what he observed. Plaintiff has offered no evidence regarding the condition of her shoes and nothing in her deposition testimony rebuts Chapman's observation. Therefore, the Court finds that the condition of Plaintiff's shoes is undisputed.

[2] Defendant contends that Plaintiff cannot maintain an action pursuant to Ala. Code § 25-1-1(a), which states – in part – that an employer has a duty to insure that

> Alabama law provides that, with regard to business invitees, a landowner is:
>
> under a duty to use reasonable care and diligence to keep the premises in a safe condition, or, if the premises were in a dangerous condition, to give sufficient warning so that, by use of ordinary care, [the invitee] could avoid the danger. It is well established, however, that an invitor is not liable for injuries to an invitee resulting from a danger that was known to the invitee or that the invitee should have observed through the exercise of reasonable care. If the danger is open and obvious, the invitor cannot be held liable.

*Ex parte Industrial Distribution Services Warehouse, Inc.*, 709 So.2d 16, 19 (Ala. 1997)(citing Armstrong v. Georgia Marble Co., 575 So.2d 1051, 1053 (Ala.1991); Williams v. Newton, 526 So.2d 18 (Ala.1988))(internal citations omitted).

Plaintiff testified in her deposition that the floor is always wet because Defendant "has to keep the floor washed down." Doc. 15, Exh. A, p. 72. She also testified that she takes small steps when crossing the floor in order not to fall, and that she "wants her boots to not be slippery." *Id.* at 73. She has offered no evidence that the danger – the wet, slippery floor – was not "open and obvious," or that she was not aware of the danger. Moreover, Defendant has offered evidence

---

"the places where the employment is performed [are] reasonably safe for his employees and others who are not trespassers . . . ." Defendant contends that the section applies only to "employees and, therefore, it does not apply to Plaintiff. Plaintiff contends that she is "not a trespasser" and, therefore, the section does apply to her.

The Court need not decide this issue. Plaintiff did not plead § 25-1-1 in her complaint. Moreover, Alabama common law of premises liability requires Defendant to maintain its premises in a "reasonably safe" condition for business invitees. The parties do not dispute that Plaintiff is a business invitee.

that the sole of one of Plaintiff's boots that she was wearing at the time she fell was significantly worn; thus, the sole was smooth and not slip resistant. *See* Doc. 15, Exh. C, pp. 51-53; Doc. 10, p. 5.

Therefore, the Court finds that danger of the wet floor was "open and obvious;" therefore, Defendant is not liable.

## IV.   CONCLUSION

Based on the foregoing, the Court finds that there is no disputed issue of material fact and that Defendant is entitled to judgment as a matter of law. Thus, Defendant's motion for summary judgment (Doc. 9) is due to be granted. Plaintiff's claims against Defendant are due to be dismissed.

The Court will enter an Order contemporaneously herewith in accordance with this Memorandum Opinion granting summary judgment in favor of Defendants on all claims of Plaintiff.

DONE this 29th day of May, 2001.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE